Royal Borough of Kensington and Chelsea v. Tara Bafna-Louis

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of September, two thousand twenty-three.

PRESENT: REENA RAGGI,
RAYMOND J. LOHIER, JR.,
SUSAN L. CARNEY,
*Circuit Judges*.

------------------------------------------------------------------

ROYAL BOROUGH OF
KENSINGTON AND CHELSEA,

*Petitioner-Appellee,*

v.                                                            No. 23-470

TARA BAFNA-LOUIS, ALSO
KNOWN AS TALIA BECKER,
TALIA LOUIS, TARA BECKER,
TARA MAYNARD, TALIYA
BECKER, AND/OR TALIYA LOUIS,

*Respondent-Appellant.*

-----------------------------------------------------------------

FOR PETITIONER-APPELLEE:    KELLY ANN POWERS, Stephen John Cullen, Miles & Stockbridge P.C., Washington, DC

FOR RESPONDENT-APPELLANT:    VALDI LICUL, Wigdor LLP, New York, NY

Appeal from an order of the United States District Court for the Southern District of New York (P. Kevin Castel, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the order of the District Court is AFFIRMED.

Respondent-Appellant Tara Bafna-Louis appeals from an order of the United States District Court for the Southern District of New York (Castel, *J.*) requiring the return of her child, Baby L, to the United Kingdom pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980 T.I.A.S. No. 11,670, 1343 U.N.T.S. 89, *reprinted in* 51 Fed. Reg. 10,494 (Mar. 26, 1986) ("Hague Convention" or "Convention") and its implementing statute, the International Child Abduction Remedies Act, 22 U.S.C. § 9001 ("ICARA"). We assume the parties' familiarity with the underlying facts and the

2

record of prior proceedings, to which we refer only as necessary to explain our decision to affirm.

The Convention seeks "to secure the prompt return of children wrongfully removed to or retained in any Contracting State," and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." *Abbott v. Abbott*, 560 U.S. 1, 8 (2010) (quoting Hague Convention, Art. 1). "The United States is a Contracting State to the [C]onvention." *Hofmann v. Sender*, 716 F.3d 282, 290 (2d Cir. 2013). "[T]o prevail on a claim under the [] Convention a petitioner must show that (1) the child was habitually resident in one State and has been removed to or retained in a different State; (2) the removal or retention was in breach of the petitioner's custody rights under the law of the State of habitual residence; and (3) the petitioner was exercising those rights at the time of the removal or retention." *Gitter v. Gitter*, 396 F.3d 124, 130–31 (2d Cir. 2005). A respondent who opposes a child's return may establish certain defenses under Article 13 of the Convention. *See Souratgar v. Lee*, 720 F.3d 96, 103 (2d Cir. 2013). In cases arising under the Convention and ICARA, we review a district court's factual findings for clear error and its legal conclusions de novo. *Ozaltin v. Ozaltin*, 708 F.3d 355, 368 (2d

3

Cir. 2013). "Legal conclusions include interpretations of the Convention and applications of the appropriate legal standards to the facts." *Id*.

**I.     Habitual Residence**

Bafna-Louis first challenges the District Court's determination that Baby L's habitual residence is the United Kingdom.  A child's habitual residence presents a "mixed question of law and fact—albeit barely so." *Monasky v. Taglieri*, 140 S. Ct. 719, 730 (2020) (quotation marks omitted).  "Once "the trial court correctly identifies the governing totality-of-the-circumstances standard, however, what remains for the court to do in applying that standard . . . is to answer a factual question: Was the child at home in the particular country at issue?" *Id.*  Because the District Court here identified the correct legal standard, we review its habitual residence determination "by a clear-error review standard deferential to the factfinding court," *id.*, keeping in mind that "courts must be sensitive to the unique circumstances of the case and informed by common sense," *id.* at 727 (quotation marks omitted).

In general, "[a] child 'resides' where she lives.  [A child's] residence in a particular country can be deemed 'habitual,' however, only when her residence there is more than transitory." *Id.* at 726 (citations omitted).  For children who

4

are too young to acclimate to their surroundings — as is the case with Baby L — the "intentions and circumstances of caregiving parents are relevant considerations." *Id.* at 727. "No single fact, however, is dispositive[.]" *Id.*

Here, the District Court considered all of the relevant factors and credited Bafna-Louis's testimony that she intended to relocate to New York with Baby L. The District Court nevertheless found that Baby L was a habitual resident of the United Kingdom. That finding was supported principally by the following record evidence: (1) Baby L was born in London and was issued a passport by the United Kingdom; (2) at the time Baby L was born, Bafna-Louis "had long maintained a residence in [the United Kingdom];" (3) when Bafna-Louis traveled internationally prior to Baby L's birth, she resided principally in the United Kingdom; and (4) Baby L's biological father was physically located in the United Kingdom, and the court proceedings related to him occurred there. *Royal Borough of Kensington & Chelsea v. Bafna-Louis*, No. 22-CV-8303 (PKC), 2023 WL 2387385, at *13–14 (S.D.N.Y. Mar. 7, 2023). On such a record, we cannot conclude that the District Court clearly erred in finding that Baby L's habitual residence is the United Kingdom.

5

## II.    Custody Rights

Bafna-Louis next challenges the District Court's conclusion that the Royal Borough of Kensington and Chelsea ("RBKC") had custody rights over Baby L at the time Baby L was removed from the United Kingdom. Article 3 of the Convention states, in relevant part, that the removal of a child is wrongful where "(a) it is in breach of rights of custody attributed to a person, *an institution or any other body*, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and (b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention." Hague Convention, Art. 3 (emphasis added).

Under the Convention, "rights of custody" are defined to include "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." Hague Convention, Art. 5(a). Thus, "'the Convention's broad definition' of 'rights of custody' is not constrained to 'traditional notions of physical custody.'" *Ozaltin*, 708 F.3d at 367 (quoting *Abbott*, 560 U.S. at 12). Instead, those rights "may arise . . . by operation of law or

6

by reason of a judicial or administrative decision . . . ."  Hague Convention, Art. 3.  *Ne exeat*[1] rights, for example, "are rights of custody."  *Abbott*, 560 U.S. at 15.

According "considerable weight" to the laws of the United Kingdom, the country of Baby L's habitual residence, we affirm the District Court's conclusion that RBKC had custody rights over Baby L at the time of removal.  *See Abbott*, 560 U.S. at 10, 16.  First, before Baby L was removed, the High Court of Justice (the "High Court"), Family Division in London issued two *ne exeat* orders prohibiting the removal of Baby L from the United Kingdom.  *See* App'x 77; App'x 898 ("The mother must not remove the child from the jurisdiction of England and Wales until further order.").  These *ne exeat* orders granted the High Court rights of custody over Baby L.  *See A v. B (Abduction: Declaration)* [2009] 1 FLR 1253, 1259-60 (noting that courts become vested with rights of custody once a "judicial determination" has been issued); *see also Abbott*, 560 U.S. at 15.  Second, under the law of the United Kingdom, the RBKC was delegated the authority to enforce the rights of the High Court relating to Baby L.  App'x 918.  Third, the law of the United Kingdom also provides that an institution "claiming that a child has been

---

[1] In the family law context, a *ne exeat* order is "[a]n equitable writ restraining a person from leaving, or removing a child or property from, the jurisdiction."  Black's Law Dictionary (11th ed. 2019).

7

removed or retained in breach of custody rights . . . does not [it]self have to have custody rights but has to show that the removal is in breach of rights of custody attributed to a person, an institution or any other body either jointly or alone under the laws of the state in which the child was habitually resident immediately before the removal." *Re J (A Minor) (Abduction)* [1990] 1 F.L.R. 276, 279-80 (quotation marks omitted). Moreover, the High Court itself declared in the context of this case that Bafna-Louis's removal of Baby L after the *ne exeat* orders was "in breach of the rights of custody of the Court." App'x 918.

Our review of the laws of the United Kingdom, including the pronouncements of the High Court, persuades us that the High Court's *ne exeat* orders vested the RBKC with custody rights over Baby L before his removal and that the RBKC properly exercised those rights in this case.[2] *See Abbott*, 560 U.S. at 13.

**III. Affirmative Defenses**

Finally, Bafna-Louis contends that the District Court erred in determining that Baby L did not face a "grave risk that his . . . return would expose the child to physical or psychological harm or otherwise place the child in an intolerable

---

[2] Because we hold that the *ne exeat* orders conferred rights of custody, we need not address whether the child protection plan also conferred such rights.

8

situation," within the meaning of Article 13(b) of the Convention. While the holder of a "*ne exeat* right has a right of custody and may seek a return remedy, a return order is not automatic." *Abbott*, 560 U.S. at 22. "[A] respondent who opposes the return of the child has the burden of establishing . . . by clear and convincing evidence" that Article 13(b) applies. 22 U.S.C. § 9003(e)(2)(A); *see Blondin v. Dubois*, 189 F.3d 240, 245 (2d Cir. 1999). But Article 13(b)'s "grave risk of harm" standard "involves not only the magnitude of the potential harm but also the probability that the harm will materialize." *Souratgar*, 720 F.3d at 103. "The potential harm to the child must be severe, and the level of risk and danger required to trigger this exception has consistently been held to be very high." *Id.* (quotation marks omitted). More specifically, "a grave risk of harm from repatriation arises in two situations: (1) where returning the child means sending him to a zone of war, famine, or disease; or (2) in cases of serious abuse or neglect, or extraordinary emotional dependence, when the court in the country of habitual residence, for whatever reason, may be incapable or unwilling to give the child adequate protection." *Id.* (quotation marks omitted).

Based principally on her testimony that Individual-1 and Individual-2 raped, harassed, and assaulted her, Bafna-Louis argues that there is a grave risk

that Baby L will be exposed to great harm from those individuals if he is returned to the United Kingdom. Substantially for the reasons set forth in the District Court's March 7 order, however, we agree that Bafna-Louis failed to show that Baby L's removal to the United Kingdom poses a grave risk of harm to the child or would create an intolerable situation under Article 13(b). *Bafna-Louis*, 2023 WL 2387385, at *25-27.

## Conclusion

We have considered Bafna-Louis's remaining arguments and conclude that they are without merit. For the foregoing reasons, the order of the District Court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court